IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BEVERLY SHAND-PISTILLI | : | CIVIL ACTION |
| | : | NO. 10-01808 |
| v. | : | |
| | : | |
| PROFESSIONAL ACCOUNT SERVICES, INC. | : | |
| | : | |

O'NEILL, J.                                                                                           JUNE 16, 2011

## MEMORANDUM

Plaintiff Beverly Shand-Pistilli alleges that defendant Professional Account Services, Inc. violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. Presently before me are cross-motions for summary judgment. For the following reasons, I will grant defendant's motion for summary judgment and deny plaintiff's motion for summary judgment.

## BACKGROUND

Defendant is the debt collection agency that was responsible for collecting a $673.31 debt plaintiff owed to Pottstown Medical Center. Defendant first attempted to contact plaintiff regarding her debt by telephoning her at home at 1:05 pm[1] on January 12, 2010. Bennett Decl. at ¶ 22.[2] Defendant's phone call was answered by an answering machine and defendant's representative chose not to leave a message. Id. On the same day, defendant mailed to plaintiff's home a letter informing her that her Pottstown Medical Center account "had been placed with [defendant] for collection." See Letter from defendant to plaintiff (Jan. 12, 2010) (Am. Compl. Ex. A). Defendant telephoned plaintiff's home again on January 13, 2010 at 6:17 pm. See

---

[1] All times referenced herein are set forth in eastern standard time. At all relevant times, plaintiff's residence was located in the eastern time zone.

[2] Dennis Bennett is defendant's director of self-pay collections. See Bennett Decl. at ¶ 1.

Bennett Decl. at ¶ 23.  The call was answered by an answering machine and defendant's representative did not leave a message.  Id.  The same sequence of events occurred on January 18, 2010 at 6:02 pm.  Id. at ¶ 24.

On January 20, 2010 at 11:20 pm, plaintiff called defendant and spoke with a representative named Heather who informed her at the outset that "[t]his communication is from a debt collector and is an attempt to collect a debt.  Any information obtained will be for that purpose."  Id. at ¶ 25; Pl.'s Dep. 57:19-22 (Nov. 2, 2010).  Plaintiff informed Heather that she had "been in contact with the hospital ever since [she] started getting these bills.  And they assured [her] that it would not go to collection."  Id. at 58:4-8.  Heather responded "[w]e don't report to the credit bureau.  We're just billing for the hospital."  Id. at 58:9-11.  Later in the conversation, plaintiff stated "[w]ell I'm not paying it.  That's what I'm saying.  This is not my responsibility."  Id. at 60:2-4.  The conversation concluded after plaintiff asserted that she would contact her insurance company to ensure that it had not mistakenly billed her.  Id. at 62:9-14.  Plaintiff did not at any time during the conversation ask defendant not to attempt to contact her at home.  Bennett Decl. ¶ 28.

Plaintiff called defendant back the next day and spoke with a representative named Monica.  Pl.'s Dep. 64:16-17.  Monica informed plaintiff at the beginning of the conversation that "[t]his communication is from a debt collector and is an attempt to collect a debt.  Any information obtained will be used for that purpose."  Id. at 65:12-15.  Plaintiff informed Monica that she had spoken to her doctor, who had assured her that he would call the insurance company and address the outstanding balance on her account.  Id. at 66:6-12.  Apparently, one of the tests that the doctor had ordered was not covered by plaintiff's insurance.  Id. at 70:21-24.  Monica

informed plaintiff that the doctor would have "to change his coding" and "resubmit to [plaintiff's] insurance." Id. at 68:12-18.  Monica offered to resubmit the claim to the insurance company if the doctor did not want to.  Id. at 68:18-20.  She reiterated, however, that plaintiff would have to convince the doctor to change his coding because that was not something that defendant had the power to do.  Id. at 68: 20-22.  Monica also informed plaintiff that while she was waiting for her doctor to make the necessary changes she should attempt to keep her account in good standing by making payments to defendant.  Id. at 71:23-72:2.  Monica assured plaintiff that if she made a payment and then her insurance later also made a payment, plaintiff would be reimbursed for whatever overpayment resulted.  Id. at 72:2-5.  Monica also agreed to put plaintiff's account "on hold" for ten days.  Id. at 72:10-11.  Monica then verified plaintiff's contact information, place of employment and marital status and informed plaintiff that if she was unable to resolve the issue within ten days "[defendant] may want you to pay something on you bill just to give you another 30 days . . . ."  Id. at 73:10-13.  Plaintiff did not request that defendant not attempt to contact her at home.  Bennett Decl. ¶ 32; Pl.'s Dep. 74:12-15.

On January 27, 2010, defendant mailed a letter to plaintiff which informed her that defendant had "verified [her] employment with: Norristown [State] Hospital . . . ."  See Letter from defendant to plaintiff (Am. Compl. Ex. B).  The letter further asserted that "current employment indicates [plaintiff has] the ability to make suitable arrangements to pay this debt." Id.

Defendant telephoned plaintiff on March 1, 2010 at 8:17 am.  Bennet Decl. ¶ 37.  This call was answered by an answering machine and defendant did not leave a message.  Id.  Two days later, Rosanne, a representative of defendant, telephoned plaintiff.  Id. at 38.  This time,

3

plaintiff answered.  Id.  Rosanne immediately informed plaintiff that the phone call was "from a debt collector [and was] an attempt to collect a debt."  Pl.'s Dep. 77:11-13.  Following Rosanne's disclaimer, the following conversation occurred:

| | |
|---|---|
| Plaintiff: | Okay, I'm not interested in these solicitation calls. |
| Rosanne: | Ma'am, it's not a solicitation call. |
| Plaintiff: | I'm going to call my lawyer and let him know that you are harassing me. |
| Rosanne: | Ma'am, I have not harassed you. |
| Plaintiff: | Yes, you are.  I'm going to call the lawyer and let him know. |
| Rosanne: | Go ahead.  That's fine.  Thank you. |

Id. at 77:24-78:13.  Plaintiff conceded that Rosanne did not abuse her during the phone call.  Id. at 79:3-5.  However, plaintiff testified that she viewed the phone call itself as harassment.  Id. at 79:6-10.

Defendant telephoned plaintiff again on March 10, 2010 at 8:34 am.  Bennett Decl. ¶ 42.  The call was answered by an answering machine and defendant's representative declined to leave a message.  Id.  This sequence of events occurred again on March 16, 2010 at 8:54 am, id. at ¶ 43, March 18, 2010 at 7:51 pm, id. at ¶ 44, and March 22, 2010 at 8:48 am, id. at 45.

On March 24, 2010, defendant telephoned plaintiff at 8:58 pm.  Id. at 46.  Plaintiff's husband, David Pistilli, answered the call.  Id.  The record does not contain a complete transcription of the telephone call.  See David Pistilli's Dep. 16:2-5.  It includes only the end of the conversation wherein David Pistilli stated "[g]o fuck yourself" and defendant's representative replied "[t]here's no need to talk like that, sir."  Id.  David conceded that defendant's representative did not use any profane language or abuse him during the phone call.  Id. at 16:15-

4

20. He asserted, however, that he viewed the phone call as harassment "because of the time of the call and the nature of the call." Id. at 16:23-25.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23. If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W.

Chester, 891 F.2d 458, 460 (3d Cir. 1989). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

ANALYSIS

Defendant argues that plaintiff has not produced evidence indicating that it violated the FDCPA. I will discuss separately the evidence in support of each of plaintiff's claims.

I.  Plaintiff's Claim Under 15 U.S.C. § 1692c(b)

15 U.S.C. § 1692c(b) provides:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Defendant argues that the record contains no evidence that it communicated with a third party regarding plaintiff's debt.[3] Plaintiff's amended complaint alleged that "on or about January 27, 2010, Defendant mailed a letter to plaintiff stating it had contacted her employer and verified her employment status."[4] Am. Compl. ¶ 26. Defendant has produced evidence indicating that it has

---

[3]     Defendant's March 24, 2010 phone conversation with plaintiff's husband was not a violation of 15 U.S.C. § 1692c(b). See 15 U.S.C. § 1692c(d) (defining the term "consumer" to include the consumer's spouse).

[4]     Review of the January 27, 2010 letter reveals that plaintiff mischaracterized its contents in her amended complaint–the letter does not state that defendant had contacted plaintiff's employer. See Am. Compl. Ex. B. The fact alone that defendant possessed the

not communicated with any third party with respect to plaintiff's debt. See Bennett Decl. ¶ 35 ("PASI has not contacted Plaintiff's employer."); ¶ 36 ("PASI has not contacted any third parties concerning plaintiff's debt."). Plaintiff has not produced any evidence to contradict Bennett's declaration. See Pl.'s Dep. 54:19-24 ("Q. Do you believe that my client contacted your employer about this debt? A. That I don't know."). Indeed, she does not address this issue at all in her brief. See Pl.'s Aff. ¶ 7 (Doc. No. 26, Ex. A) (explaining that she mistakenly thought that defendant's January 27, 2010 letter to her indicated that defendant had contacted her employer). Because plaintiff has not produced evidence to raise a genuine issue of material fact on this point, I will grant summary judgment in favor of defendant.

II.     Plaintiff's Claims Under 15 U.S.C. § 1692c(a)(1)

Section 1692c(a)(1) provides:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt–
>
> (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location[.]

Plaintiff argues that defendant knew or should have known that telephone calls to plaintiff's home were inconvenient. In support of this argument, she relies on her March 1, 2010 phone conversation with defendant's representative wherein she stated "[o]kay, I'm not

---

contact information for plaintiff's employer is not enough to raise the inference that it actually contacted plaintiff's employer.

interested in these solicitation calls." Pl.'s Dep. 77:24-25. Plaintiff's statement refers not to the timing or location of the call but to its subject matter, which section 1692(a)(1) does not regulate.[5] See Saltzman v. I.C. Sys., Inc., No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009 ) (noting that the FDCPA does not prohibit "legitimate, albeit persistent, effort[s] to reach [a debtor]."). Plaintiff's statement was insufficient to put defendant on notice that she viewed telephone calls to her home as inconvenient.[6] I will therefore grant defendant's motion with respect to this claim.

III.     Plaintiff's Claim Under 15 U.S.C. § 1692d(5)

Section 1692d(5) provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general

---

[5] The statute requires a debt collection agency to cease communicating with a consumer about the collection of the debt only "if [the] consumer notifies [the] debt collector in writing that the consumer refuses to pay [the] debt or that the consumer wishes the debt collector to cease further communications with the consumer . . . ." 15 U.S.C. § 1692c(c).

[6] The parties disagree over whether the "least sophisticated debtor" standard applies to claims under section 1692c(a)(1). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." Withers v. Eveland, 988 F. Supp. 942, 945 (E.D. Va. 1997). This standard ordinarily applies in analyzing a statement made by the debt collection agency to a consumer. See, e.g., Irwin v. Mascott, 112 F. Supp. 2d 937, 950 (N.D. Cal. 2000) (applying the least sophisticated debtor standard in determining whether the debt collection agency violation section 1692e(5) which prohibits a debt collection agency from threatening to file a lawsuit when it does not intend to do so); Dutton v. Wolhar, 809 F. Supp. 1130, 1135-36 (D. Del. 1992) (applying the least sophisticated debtor standard in determining whether a debt collection agency had made a "false, deceptive, or misleading representation or means in connection with the collection of any debt[]" in violation of section 1692e(2)(A)).
    I need not decide whether that standard applies to plaintiff's claim under section 1692c(a)(1) because I find that even the least sophisticated debtor would not have understood plaintiff's March 1, 2010 statement to be an indication that plaintiff wished not to receive communications from defendant at her home.

> application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

Defendant called plaintiff a total of ten times over the course of a seventy-three day period. Courts have found far more intrusive conduct not to be actionable under the FDCPA. See, e.g., Tucker v. CBE Grp., Inc., 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010) (granting summary judgment in favor of the defendant where there was evidence that the defendant had called the plaintiff fifty-seven times over an undisclosed time period, including as many as seven calls in a single day); Saltzman, 2009 WL 3190359, at *7 (granting summary judgment in favor of the defendant where the defendant collection agency telephoned the plaintiff between twenty-two and sixty times over the course of thirty-three days). I accordingly find that there is no evidence that defendant caused plaintiff's telephone to ring repeatedly or continuously as required to state a claim under the FDCPA.

Nor do I find any evidence demonstrating that defendant called plaintiff's home with the intent of annoying, abusing or harassing plaintiff. Plaintiff argues that a jury could infer that defendant intended to harass her based on the number of phone calls to her home and the fact that defendant called after she informed it on March 1, 2010 that she considered such calls to be harassment. Pl.'s Dep. 78:4-6. "Intent to annoy, abuse, or harass may be inferred from the frequency of phone calls, the substance of the phone calls, or the place to which phone calls are made." Kerwin v. Remittance Assistance Corp., 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008).

> [C]ourts have found, for example, that an immediate callback after the debtor has hung up or has indicated his or her unwillingness to speak to the debt collection agency may constitute improper harassment. See Lovelace v. Stephens & Michaels Associates, Inc., No. 07-10956, 2007 WL 3333019, at *7 (E.D. Mich. Nov.9, 2007). In contrast, a debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages. See Udell v. Kansas Counselors, Inc., 313 F. Supp. 2d 1135, 1143-44 (D. Kan. 2004).

Saltzman, 2009 WL 3190359, at *7. I find that the pattern of phone calls does not demonstrate the requisite actionable intent. Unlike in Saltzman where the defendant called the plaintiff between twenty-two and sixty times over the course of thirty-one days, in this case defendant called plaintiff only ten times over seventy-three days. Defendant never called plaintiff more than once on the same day and, indeed, only once called plaintiff on consecutive days. Most of the phone calls went unanswered because plaintiff was not at home at the time of the call. Pl.'s Dep. 28:18-20. Defendant's pattern of phone calls is simply not sufficient by itself to raise a genuine issue of material fact as to defendant's intent in making the phone calls. See Pugliese v. Prof'l Recovery Serv., Inc., No. 09-12262, 2010 WL 2632562, at *9-10 (E.D. Mich. June 29, 2010) (granting summary judgment in favor of the defendant where the evidence showed that the defendant called plaintiff approximately 350 times over an eight month period).

This is especially true because defendant's representatives conducted themselves politely. See Pl.'s Dep. 74:9-11 (Q. . . . Was [defendant's representative] polite to you in that phone call? A. Yes."). Both plaintiff and her husband conceded at their depositions that defendant's representatives did not at any time abuse them or use profane language. See Pl.'s Dep. 63:21-25; 74:5-8 79:3-5; David Pistilli's Dep. 16:15-20. Defendant's representatives did not leave

threatening messages, Udell, 313 F. Supp. 2d at 1143-44, call back immediately after plaintiff had hung up, Kuhn v. Account Control Tech., Inc., 865 F. Supp. 1443 (D. Nev. 1994), or abruptly disconnect any call, Stuart v. AR Res., Inc., No. 10-3520, 2011 WL 904167, at *3 (E.D. Pa. Mar. 16, 2011). The conduct of defendant's representatives was in no way suggestive of an intent to annoy, abuse or harass plaintiff.

Finally, the fact that defendant continued to call plaintiff after she stated on March 1, 2010 that she was "not interested in these solicitation calls" and that she considered such calls to be harassment, see Pl.'s Dep. 77:24-78:6, is also not sufficient to raise a genuine issue of material fact with respect to defendant's intent. See Saltzman, 2009 WL 3190359, at *7 (granting summary judgment in favor of the defendant despite evidence that the defendant had called after the plaintiff had verbally requested that it stop calling). In light of the polite tone of the phone calls and their relative infrequency I find that defendant's phone calls to plaintiff were legitimate attempts to reach her. See id. The FDCPA does not prohibit such conduct.[7] See id.

IV.     Attorney's Fees Under 15 U.S.C. § 1692k(a)(3)

Defendant seeks sanctions under 15 U.S.C. § 1692k(a)(3) which provides "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." Defendant concedes that "[b]ad faith 'is not simply bad judgment or negligence, but rather implies the conscious doing of a wrong [and] contemplates a state of mind

---

[7] Plaintiff's complaint also alleges generally that defendant "engaged in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt[.]" Am. Compl. ¶ 31(c), citing 15 U.S.C. § 1692d. Plaintiff has not pursued this claim in her present brief and my review of the evidence reveals no such conduct. Defendant is entitled to judgment on that claim as well.

affirmatively operating with furtive design or ill will.'" See Def.'s Br. at 27, quoting Silvious v. Midland Credit Mgmt., No. 07-145, 2010 WL 3491218, at *2 (N.D. W. Va. Sept. 1, 2010).

I find no evidence that plaintiff prosecuted this action in bad faith. Although I have found that there is insufficient evidence to hold defendant liable for violating the FDCPA, the evidence does not indicate that plaintiff "believed her action to be without merit" or "was motivated purely by a desire to harass [defendant]." See Countryman v. Solomon & Solomon, No. 99-1548, 2000 WL 156837, at *3 (N.D.N.Y. Feb. 8, 2000).

## CONCLUSION

In light of the foregoing, I will grant defendant's motion for summary judgment and deny plaintiff's cross-motion for summary judgment. I will also deny defendant's motion for attorney's fees.

An appropriate Order follows.